**SID W. RICHARDSON, Inc.,**
**Plaintiff,**

v.

**Thomas E. BRYAN, Defendant.**
**Civ. A. No. 1256.**

United States District Court
S. D. Texas, Corpus Christi Division.
June 27, 1956.

---

James C. Martin, Corpus Christi, Tex., Herbert J. Brown, Ira Butler, Charles L. Stephens, Gillis A. Johnson, Fort Worth, Tex., for plaintiff.

Neal B. Marriott, Corpus Christi, Tex., Mellin, Hanscom & Hursh, Oscar A. Mellin, San Francisco, Cal., for defendant.

ALLRED, District Judge.

Action for infringement of Claims 1, 4 and 6 of Letters Patent No. 2,664,162 (hereafter referred to as 162), invented by Kenneth C. Howard, Harold E. McGowen, Jr. and Howard H. Moore, Jr., and Claims 1 to 4, inclusive, of Letters Patent No. 2,679,903 (hereafter referred to as 903), invented by McGowen and Moore, both patents issued to plaintiff as assignee.

162 is a combination patent whereby, for the first time in the history of the oil and gas industry, a particular flow

control valve [1] located in, or attached to, well tubing far below the surface can be *selectively* removed, repaired or replaced on the surface and returned *selectively* (1) without pulling the tubing or (2), in case of fixed in-line valves, leaving the tubing open for swabbing or other operations. It solved a long-felt need in the industry and approaches even the "flash of creative genius" test,[2] if ever that was required.[3] 903 is an improvement patent and shows upon its face to be a continuation in part of the application upon which patent 162 issued.

Practically all of the witnesses testified in person where the court had opportunity to observe them and analyze their testimony. Large working models of both inventions, as well as the accused device, were demonstrated at length before the court. This was most helpful to a judge inexperienced in patent trials and having no technical training. The trial was so ably conducted on both sides and the evidence so revealing that, at the conclusion of the evidence, the court stated:

"The Court: Frankly, I have got my mind pretty well made up on the facts. Frankly, I think this case is going to get down to the validity of the plaintiff's patents. Frankly, I think that if the plaintiff's patents are valid, I think that the defendant's, or the accused device of the defendant, is in contravention of the plaintiff's device. I think they have been infringed, if

their patents are valid, so I would like to have a brief from counsel on both sides."

As indicated above, and by the fact that briefs were called for, the foregoing was not intended to foreclose the issues but rather to indicate to counsel the focal point upon which they should center their briefs. What the court had in mind as to the validity of plaintiff's patents, although not clearly expressed, was whether the claims were sufficiently definite, particularly whether prohibited functional language was used at the exact point of novelty in 162. The court had no doubt that the patents met the test of invention as to novelty, something more than the ordinary skill of the average mechanic, that they represented and fulfilled more than a long-felt need in the industry, something new and useful, which might be said, without overstatement, almost to be revolutionary; nor did the court have any doubt that the accused device infringed plaintiff's patents if they were valid; or that such infringement was willful and deliberate.[4] The sole question in the court's mind was the sufficiency of the claims, in the light of the specifications, drawings, etc., so vigorously challenged by defendant.

Counsel have had the testimony transcribed and have filed clear and excellent briefs. These have been very helpful to a better understanding of the case and the legal questions involved. My first impression upon the facts has been

---

1. See Guiberson Corp. v. Garrett Oil Tools, 5 Cir., 205 F.2d 660, 662, footnote 3, for a description of such valves and their functions. Plaintiff's invention is not for a valve control unit but *selective* insertion and removal without incurring the heavy expense and loss of time involved in pulling the tubing, etc.

2. Cuno Engineering Co. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58.

3. Cf. Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783; Vincent v. Suni Citrus Products Co., 5 Cir., 215 F.2d 305, 315-316, expressing general agreement with the statement in a journal

of the Patent Office Society analyzing the effect of Section 103 of the Patent Act of 1952, 35 U.S.C. § 103; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530; Pacific Contact Laboratories v. Solex, 9 Cir., 209 F.2d 529.

4. Most of these facts are clear to me from admissions, reluctantly made, by defendant. I hesitate to find that he deliberately falsified but his testimony is of such a nature, so unsatisfactory, so many times in the face of the clear facts and his attempted purloining of plaintiff's invention so deliberate and brazen, that I find against him on all disputed issues.

strengthened. The evidence overwhelmingly sustains plaintiff's contentions substantially in every respect; and, under the rules laid down in the cases cited by both parties, it is clear to me now that the challenged claims, interpreted in the light of the specifications, drawings, etc., are sufficient to render plaintiff's patents valid and entitle it to the relief sought.

The court also requested counsel to file suggested findings of fact and conclusions of law; not that the court intended blindly to enter the findings requested by either side but the preparation of a memorandum, or findings of fact and conclusions of law is difficult even in an ordinary case. As indicated, I shall adopt the findings and conclusions submitted by plaintiff. Originally I had felt that in justice to counsel, I should file a memorandum discussing all the findings and authorities and had commenced the preparation of such a memorandum. I find, however, that it involves so much repetition that it will enlarge unduly an already voluminous record. In addition, being engaged almost constantly in the trial of cases, having to read the briefs and record in my spare time and being desirous of disposing of the action within a reasonable time after submission, I have concluded to file the formal findings of fact and conclusions of law tendered by plaintiff; and only discuss, as briefly as possible, defendant's contentions as to 162, to which the greater part of the briefs are devoted.

1. Urging a finding of noninfringement, defendant contends that all the patentees did was make use of tools and methods old in the art[5] and originate an offsetting tool of new construction to place a flow valve in, and remove it from, a selected mandrel; that this is the only novelty; that the offsetting tool in the accused device is substantially different from that in patent 162; that the accused device itself is substantially different in mode of operation confirmed by a decision of the Patent Office on plaintiff's application,[6] which is strong evidence of material and substantial differences.[7] This presumption as to a *patentable difference*, however, is not a presumption of *noninfringement*.[8] It is plaintiff's prior patents, not defendant's (even if it had been finally granted), which are presumed to be valid by statute,[9] casting the burden of establishing invalidity by clear and satisfactory proof upon defendant who asserts invalidity.[10] Defendant has failed to discharge this burden. Even If Plaintiff Had The Burden, the evidence preponderates overwhelmingly in its favor.

2. Defendant says the claims (1, 4 and 6) are invalid since they do not define the mechanism except by its *function*, or the *result* it produces—claiming and monopolizing an *idea*, a *function* or *result*,[11] attempting to claim more than the patentees invented,[12] indefinite and failing to show the public the true scope

**5.** Kyner patent '247—2,210,247; Garret '107 D. 30—2,230,107; Fisher '587—2,010,587; Kothny '420—2,107,420; Obervetter '514—2,268,514.

**6.** Although patent has not issued, defendant has made application for letters patent on his Flowmaster. There has been a decision by the Patent Office (Ex. D. 23A) in which the Examiner had before him 162 and 903, yet allowed two claims to defendant.

**7.** Knowles v. 138 West Forty Second St. Corp., 2 Cir., 43 F.2d 929, 930; Royal Typewriter Co. v. L. C. Smith, D.C.Conn., 76 F.Supp. 190, 193; Edwards v. Johnston, D.C.Tex., 44 F.2d 607, 614; Freeman v. Altvater, 8 Cir., 66 F.2d 506.

**8.** Freeman v. Altvater, footnote 7, supra; Matthews v. Koolvent Awning Co., 5 Cir., 158 F.2d 37, 40; 3 Walker on Patents, p. 1758.

**9.** 35 U.S.C. § 282.

**10.** 2 Walker on Patents, Deller's Ed. p. 1273; Jeoffrey Mfg. Co., Inc., v. Graham, 5 Cir., 206 F.2d 772.

**11.** Henry v. City of Los Angeles, 9 Cir., 255 F. 769, 778, Demco v. Doughnut Machine Corp., 4 Cir., 62 F.2d 23; Heidbrink v. McKesson, 6 Cir., 290 F. 665.

**12.** Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868; Refrigeration Patents Corporation v. Stewart Warner Corp., 7 Cir., 159 F.2d 972, 976.

of the patentee's invention;[13] and, principally, because of the use of *functional language at the exact point of novelty*.[14]

This contention as to invalidity was the principal point upon which the court expressed a desire for light at the conclusion of the evidence, as quoted at the outset of this memorandum. There can be no quarrel with the *principles* stated in the cases cited by defendant if they are applicable to the challenged claims. Defendant's counsel has plucked only a portion out of Claim 1 and laid it alongside claims condemned in Halliburton (footnote 14, supra) and other cases. Claims 1, 4 and 6, will now be quoted in full:

"The described form of the invention is not restrictive, but may be made in many ways within the scope of the appended claims.

"What is claimed is:

"1. In combination with a well tubing having a vertical main bore, said tubing including one or more flow valve receiving sections each having a portion laterally offset from the vertical main bore and provided with a flow valve seat in the offset portion, and means, including a shifting tool adapted to be lowered from the top of the tubing to the level of a selected section, for selectively seating or removing a flow valve in or from its seat within a selected receiving section, said shifting tool being provided with means for moving said tool and its appendages laterally within the offset portion of the selected section.

"4. The combination as set forth in claim 1 wherein a jar is opera-

tively connected with the shifting tool.

"6. The combination as set forth in claim 1 wherein a flow valve seat is formed in a flat base portion of each of the flow valve receiving sections."

As also appears from the opening language in the description concerning such movable element, old and well understood to those skilled in the art: "The tool being lowered to the level of the offset portion and then deflected laterally by any suitable means into the offset portion of the tube."

To properly complete the disclosure in the drawings and specifications, several forms as examples and illustrative of the movable element employed were given and described including both a mechanical form for laterally shifting the tool and also electrical and magnetic forms with structural details.

■ It must be borne in mind that 162 is a *combination*, not an aggregation of several results, patent, some of the elements or parts being old and some new, the old being given a new function and use to achieve a new and novel result; that it performed new, additional and different functions beyond any prior disclosure or teaching. "Means" is used twice in claim 1 in connection with movable elements or parts already well known and designed to cooperate with the new element in order to make a complete operating machine. This seems expressly authorized by the last paragraph of section 112 of the Patent Act of 1952.[15] Usage of what otherwise might seem to be functional language in combination patents had been rec-

13. United Carbon Co. v. Binney & Smith Corp., 316 U.S. 657, 62 S.Ct. 1269, 86 L.Ed. 1735; Henry v. City of Los Angeles, footnote 11, supra; Holland Furniture Co. v. Perkins, footnote 12, supra.

14. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

15. 35 U.S.C. reading in part as follows:
"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. * * *"

ognized as proper in many cases [16] before the amendment of 1952. The elements of a novel combination may be defined functionally.[17] I cannot agree with defendant's counsel that no significance, other than to restate existing law, is to be attached to the added language in section 112 of the Patent Act of 1952. Rather, I think, it was to return to the *principles* enunciated in the Paper Bag and other cases from which, some must have feared, the court had departed in the Halliburton case, 329 U.S. 1, 67 S.Ct. 6.[18] Personally, I do not believe there was a just basis for that fear since the Court, before the amendment, again recognized in Faulkner v. Gibbs, 338 U.S. 267, 70 S.Ct. 25, propriety of the use of functional language in combination patents and patentability "because of the fact of combination rather than the novelty of any particular element." Mr. Justice Black dissented because, in his opinion, the language of the claims was too broad "at the precise point where there was novelty, if there was novelty anywhere." To my mind there is no conflict between Halliburton and Faulkner v. Gibbs as to the *principles* announced. There *is* room for argument that the principles may have been misapplied in Halliburton.[19]

■■ Even prior to the amendment of 1952 it had been held that it was only necessary that the claims point out the invention, not that they describe it, where the "means" are clearly shown in the description of the patent;[20] that "means" must be interpreted in the light of the specifications and drawings.[21] If reading the claims *in the light of the specifications*, one skilled in the art readily could apprehend the precise nature of the invention and the limitation of its scope, it is sufficient.[22]

■ I hold that claims 1, 4 and 6 of patent 162, when interpreted in the light of the specifications and drawings are not indefinite and, being a combination patent, they are not to be condemned as using functional language at the exact point of novelty.

As stated, I shall not discuss in detail defendant's contentions as to 903,[23] that

16. The Paper Bag case, Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Davis Sewing Machine Co. v. New Departure, 6 Cir., 217 F. 775; Robertson Bit Co. v. Hughes Tool Co., footnote 3, supra; E-I-M Co. v. Philadelphia Gear Works, 5 Cir., 205 F.2d 28; Faulkner v. Gibbs, 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62. Note: the claims, making use of "means" and "adapted" many times, in Faulkner v. Gibbs, are to be found in Gibbs v. T.Z.R. Amusement Corp., D.C., 14 F.Supp. 957.

17. Wyman, 4 JPOS 433, 438.

18. Cf. Comments of the Examiner in Chief for the Patent Office in the introduction to Title 35 U.S.C.A. p. 25: and the comment of Judge Hand in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 537, as to section 103 that "a legislature, whose will the courts have undertaken to proliferate, must be free to reinstate the courts' initial interpretation, even though it may have been obscured by a series of later comments whose upshot is at best hazy."

19. The District Court upheld the claims in the Halliburton case. The Court of Appeals affirmed, 9 Cir., 146 F.2d 817. The Court originally affirmed by an evenly divided Court. 326 U.S. 705, 66 S.Ct. 90, 90 L.Ed. 416. On rehearing it reversed 329 U.S. 1, 67 S.Ct. 6, 13, 91 L. Ed. 3, with Mr. Justice Burton dissenting and Mr. Justice Frankfurter concurring as to indefiniteness in the claims but reserving judgment "as to considerations that may be peculiar to *combination* patents in satisfying that requirement." (Emphasis supplied.)

20. Petersen v. Coast Cigarette Vendors, 9 Cir., 131 F.2d 389, 391; Shull Perforating Co. v. Cavins, 9 Cir., 94 F.2d 357, 364.

21. Cincinnati Milling Mach. Co. v. Turchan, 6 Cir., 208 F.2d 222, 223, 225; Application of Newton, 187 F.2d 337, 38 C. C.P.A., Patents, 877.

22. S. D. Warren Co. v. Nashua Gummed & Coated Paper Co., 1 Cir., 205 F.2d 602.

23. That is not valid because the claims include prior art processes or machines and do not define a patentable invention; that the accused device does not infringe (either 903 or 162). As shown by the formal findings of fact, the accused device

*three* patents (162, 903 and 2,679,904 have issued on the same invention and that plaintiff is guilty of unfair competition, misuse of its patents and unclean hands. The formal findings of fact and conclusions of law, amply supported by the record, dispose of these contentions. After all, there is, in reality, no real dispute between the parties as to the principles of law announced in the cases, they only differ as to their application to the facts as they see them. I have resolved these disputed issues in the formal findings filed herewith.

Decree will be for plaintiff. The Clerk will notify counsel to submit an order accordingly.

—defendant's "Flowmaster"—, irrespective of slight structural variations, does the same work in substantially the same way and accomplishes the same result as plaintiff's patents. It is an attempt to change the form, size and shape and must be held to be the same. Jeoffrey Mfg. Co. Inc. v. Graham, footnote 10, supra; Freeman v. Altwater, footnote 7, supra.